IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTELLIGENT DISCOVERY
MANAGEMENT, LLC and BALINT BROWN
& BASRI, LLC,

    Plaintiffs,

  v.

OMNIVERE HOLDING COMPANY, LLC,
OMNIVERE, LLC, and ERIK S. POST,

    Defendants.

C.A. No. 1:15-cv-01134-GMS

## MEMORANDUM

## I. INTRODUCTION

Plaintiffs Intelligent Discovery Management, LLC ("IDM") and Balint Brown & Basri, LLC ("B3") (together, "Plaintiffs") filed a Complaint on December 8, 2015 alleging claims of violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, common law fraud, negligent misrepresentation and breaches of contract relating to an Asset Purchase Agreement and Operating Agreement. (D.I. 1.) On February 4, 2016, Defendants OmniVere Holding Company, LLC ("OmniVere Holding"), OmniVere, LLC, and Erik S. Post ("Post") (together, "Defendants") filed a Motion to Dismiss for Failure to State a Claim or Transfer Venue ("Motion to Transfer"). (D.I. 10.) Presently before the court are the Defendants' Motion to Transfer to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), and the Plaintiffs' Cross-Motion for Leave to File an Amended Complaint. (D.I. 10; D.I. 17.)

For the reasons that follow, the court will grant the Defendants' Motion to Transfer Venue and consequently will not rule on any other motions at this time.

## II.   BACKGROUND

Plaintiffs IDM and B3 are New York Limited Liability Companies, headquartered in New York.   (D.I. 1 at ¶¶ 6–7.)   Defendant OmniVere Holding is a Limited Liability Company headquartered in Chicago, Illinois and incorporated in Delaware.   Defendant OmniVere, LLC, is a wholly-owned subsidiary of OmniVere Holding, and is a Delaware Limited Liability Company also located in Chicago, Illinois. (*Id.* at ¶¶ 8–9.) Defendant Erik S. Post is a citizen of Illinois who during the relevant period was the CEO of OmniVere Holding as well as President of OmniVere, LLC. (*Id.* at ¶ 10.)

In April and May of 2014, the Defendants began purchasing the assets of multiple e-discovery vendors, including the Plaintiffs.   Pursuant to the purchase, the parties negotiated and signed an Asset Purchase Agreement ("the APA"), which listed the particular units among the Plaintiffs' assets for sale and described the terms of sale to the Defendants.  (D.I. 1 at ¶¶ 15, 24.) The Plaintiffs' complaint alleges that the Defendants fraudulently induced them to invest in certain units of preferred equity when they entered into the APA.  (*Id.* at ¶¶ 63–67.) These investments, like the APA itself, were negotiated and conducted in New York, and the Defendants used a New York accounting firm to perform due diligence services that were also conducted in New York. (D.I. at ¶ 9; D.I. 12, Ex. 3 at ¶ 8.) No part of the complaint alleges that any negotiations over the APA or any activity related to the transactions took place in Delaware.

The APA contains a forum selection clause that reads in pertinent part:

> Any legal action or proceeding with respect to this Agreement shall be brought in the courts of the State of New York or the federal courts . . . of New York, and . . . [t]he Parties hereto hereby irrevocably waive any objection, including any objection to the laying of venue or based on the grounds of *forum non conveniens*, which any of them may now or hereafter have to the bringing of any such action or proceeding in such respective jurisdictions.

(D.I. 12-2, Ex. 2 at 32–33.)  The Plaintiffs also negotiated and signed an Operating Agreement ("the OA") between themselves and Defendant OmniVere Holding in New York.  The OA contains a clause entitled "Consent to Jurisdiction and Service of Process" and states that "[t]he parties irrevocably consent to the jurisdiction and venue of the state and federal courts located in Delaware in connection with any action relating to this agreement." (D.I. 19, Ex. B at § 18.4.)

As a result of the APA, several complicated and intertwined cases have arisen in the Commercial Division of the New York State Supreme Court before the Honorable Shirley W. Kornreich ("the New York court").  The two currently pending cases involve Plaintiffs IDM and B3 as defendants in one case ("the *Balint* action"), and Defendants OmniVere, LLC and Post as defendants in the other case ("the *RCLLC* Case").  The *RCLLC* Case includes claims of breach of contract, fraud, and wrongful termination against the Defendants.  As a defense against the *RCLLC* plaintiff, the OmniVere, LLC and Post alleged that IDM and B3 committed fraud in negotiating the APA.  (D.I. 12 at ¶¶ 12–15.)  On November 19, 2015, Judge Kornreich held a status conference in which OmniVere, LLC disclosed its intent to bring those same fraud allegations as affirmative claims against IDM and B3.  (*Id.* at ¶ 17.)  The New York court stalled the filing of such an amended complaint until the parties completed court-ordered mediations involving other claims. (*Id.* at ¶ 18.)  On December 8, 2015, IDM and B3 commenced this action alleging fraud against the Defendants.  On December 17, 2015, the New York court was made aware of the filing of this case, and on the following day issued *sua sponte* an order that any action for fraud brought by the Defendants against the Plaintiffs in New York would not be dismissed on the basis of there being a prior filed case in Delaware.  (D.I. 12-1.)

The Defendants now move to transfer these proceedings to the Southern District of New

York.  They contend that the court should transfer the case in light of the operative facts taking place in New York, the New York forum-selection clause, the location of key witnesses, and the ongoing litigation in the State of New York.  (D.I. 20 at 17.)  In response, the Plaintiffs contend (1) that the OA's Delaware consent clause is actually mandatory, not permissive, and that under the precedent of both the Third Circuit and this court the APA's clause should be disregarded due to the conflict; and (2) the factors that the court must balance in evaluating § 1404(a) ultimately favor denying the motion.  (D.I. 18 at 19–20.)  For the foregoing reasons, the court grants the Defendants' motion.

### III.    STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  Under this provision, a district court may exercise "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).  The purpose of transfer is to protect litigants, witnesses, and the public from the unnecessary waste of time, energy, and money. *See Virgin Wireless, Inc. v. Virgin Enters. Ltd.*, 201 F. Supp. 2d 294, 299 (D. Del. 2002) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

The court undertakes a two-step inquiry in order to resolve a motion to transfer.  "The court first asks whether the action could have been brought in the proposed transferee venue and then determines whether transfer to a different forum would best serve the interests of justice and convenience." *Smart Audio Techs., L.L.C. v. Apple, Inc.,* 910 F. Supp. 2d 718, 724 (D. Del. 2012).

4

At each step, the defendant has the burden to demonstrate that a transfer is appropriate, *Jumara*, 55 F.3d at 879–80, and "unless the balance of convenience of the parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

## IV.   DISCUSSION

### A.  The Competing Forum Selection Clauses

The Plaintiffs contend that the court should decline to enforce both the APA New York forum clause and the OA Delaware forum clause. (D.I. 18 at 20.)  First, they assert that courts in the Third Circuit construe the language similar to the OA's Consent Clause as mandatory rather than permissive. (D.I. 18 at 15 n.16.)  *See, e.g., Wall Street Aubrey Golf, LLC v. Aubrey*, 189 Fed. App'x 82, 84 (3d Cir. 2006) (holding mandatory a clause which read that the lease "shall be construed in accordance" with Pennsylvania law and "with venue laid in Butler County, Pennsylvania.")  Second, they point out that in the case of two conflicting forum selection clauses, federal courts "often decline to enforce both clauses out of concern for wasting judicial and party resources." *See Jones v. Custom Truck & Equip., LLC*, No. 3:10-cv-611, 2011 WL 250997, at *4 (E.D. Va. Jan. 25, 2011).  The court views this as a wise approach.  Rather than parse which clause should control in this case, the court disregards both and proceeds with the traditional § 1404(a) analysis.

### B.  The Propriety of the Transferee Forum

The court may only transfer an action to a "district or division where it might have been brought." 28 U.S.C. § 1404(a).  Accordingly, the court may only transfer the case to the Southern District of New York if venue would have been proper there and if that district court could have

exercised personal and subject matter jurisdiction over this action. The Plaintiffs assert that "it is by no means clear that OmniVere Holding is subject or willing to subject itself to jurisdiction in New York in the absence of the securities fraud claim," thus making the Southern District of New York an improper venue under the first *Jumara* prong. (D.I. 18 at 21.) This overlooks the fact that under New York State law, "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. Civil Practice Law and Rules, § 302(a)(1). The Defendants note that OmniVere Holding entered into its OA with the Plaintiffs in New York. (D.I. 20 at 15.) Accordingly, the Southern District of New York is a proper forum for transfer.

### C. The *Jumara* Analysis

The court next must consider whether transfer to the Southern District of New York would serve the interests of convenience and justice. In the Third Circuit, this requires an individualized analysis, accounting for the various private and public interests guarded by § 1404(a). *See Jumara,* 55 F.3d at 879. The court, rather than applying any "definitive formula," considers each of these "*Jumara* factors" on a case-by-case basis. *See id.* The private interests may include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted). And the public interests may include:

> the enforceability of the judgment: practical considerations that

6

> could make the trial easy, expeditious, or inexpensive; the relative
> administrative difficulty in the two fora resulting from court
> congestion; the local interest in deciding local controversies at
> home; the public policies of the fora; and the familiarity of the trial
> judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted).  Importantly, the *Jumara* analysis is not limited to these explicitly enumerated factors, and no one factor is dispositive.  *See id.* at 879.

### a.  Private interest factors

#### i.  Plaintiffs' forum preference

The first private interest factor is the "plaintiff's forum preference as manifested in the original choice." *Jumara*, 55 F.3d at 879.  But "when a plaintiff chooses to bring an action in a district where it is not physically located, its forum preference is entitled to something less than . . . paramount consideration." *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. 11-400-GMS, 2013 WL 105323, at *3 (D. Del. Jan. 7, 2013).  To earn deference for its decision to file in a forum besides its "home turf," a plaintiff must have "rational and legitimate reasons." *Smart Audio*, 910 F. Supp. 2d 718 at 727.  The Plaintiffs were aware of OmniVere, LLC's plans to file an amended complaint against them in the New York court. (D.I. 12 at ¶ 17.)  Their decision to file in Delaware before OmniVere, LLC could amend its complaint in New York hints at gamesmanship.  *See In Re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) ("The Supreme Court has long urged courts to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation.").  Therefore, the court declines to defer to the Plaintiff's forum preference.  This factor does not weigh against transfer to New York.

#### ii.  Defendants' forum preference

The second private interest factor is the Defendants' choice of forum.  *Jumara*, 55 F.3d at

879.  The Defendants prefer the Southern District of New York because "the operative facts occurred in New York, the APA applies New York law, and all material witnesses are located in and will be required to give testimony in New York."  (D.I. 11 at 14.)  Accordingly, this factor weighs in favor of transfer to New York.

### iii.  Location of operative events

The third private interest factor is "whether the claims arose elsewhere." *Jumara*, 55 F.3d at 879.  The parties agree that the operative facts unfolded in New York State.  (D.I. 11 at 15; D.I. 18 at 22.)  This factor weighs in favor of transfer to New York.

### iv.  Convenience of the parties

In evaluating the convenience of the parties, the court considers: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Smart Audio*, 910 F. Supp. 2d at 731 (citation omitted).

Here, the Plaintiffs are New York companies owned by New York residents.  Although they are Delaware LLCs, OmniVere Holding and OmniVere, LLC have their principal places of business in Illinois.  Post is also an Illinois resident.  If the case is transferred to New York, the Defendants will still be required to travel, but the Plaintiffs will not.  Moreover, OmniVere, LLC and Post are already litigating in New York, and leaving this suit to proceed in Delaware would therefore result in additional expense.  (*See* D.I. 11 at 16.)  The court finds the increased cost to both parties weighs slightly in favor of transfer.

8

### v.  Convenience of Witnesses

The third *Jumara* private interest factor is "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879.  The Defendants argue that because New York is more than 100 miles away from Wilmington, Delaware, potential non-party witnesses residing therein "are outside the subpoena power of this Court." (D.I. 11 at 16.)  Nevertheless, the Plaintiffs correctly note that "this factor is only given weight when there is some reason to believe that a witness actually will refuse to testify absent a subpoena." *Smart Audio*, 910 F. Supp. 2d at 731.  The Defendants produce no evidence that the witnesses will be unavailable for trial.  This factor therefore counts neither for nor against transfer.

### vi.  Location of Books and Records

All parties agree this is a neutral factor because all of the documents relevant to litigation are available electronically.  (D.I. 11 at 17; D.I. 18 at 22–23.)

### b.  Public interest factors

### i.  Practical considerations

*Jumara* instructs the court to assess "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara,* 55 F.3d at 879.  Practical considerations favor transfer where the relevant evidence, likely third-party witnesses, or company's headquarters and operations are located in the proposed district. *See Mitel Networks Corp. v. Facebook, Inc.*, 943 F.Supp.2d 463, 475 (D. Del. 2013).  Here, the Defendants note (and the Plaintiffs do not dispute) that the operative facts occurred in New York and the Plaintiffs as well as material witnesses are all located in New York.  Therefore, assembling witnesses and evidence for trial would be less

expensive in that jurisdiction. The Plaintiffs object only by noting that "this is the only federal case relating to this matter" without explaining how this fact makes the District of Delaware an easier, expeditious, or more inexpensive forum for litigating these issues than the Southern District of New York. (D.I. 18 at 23.) As a result, this factor also weighs in favor of transfer.

### ii.  Relative administrative difficulty

The court also considers the "relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. To prove that this factor weighs against transfer, the Plaintiffs produce statistics demonstrating that in 2015, District Court Judges in the Second Circuit had over twice the number of civil cases pending per judge than in the Third Circuit. (D.I. 18 at 23.) But this does not show the full picture. Examination of the relevant *districts* reveals that the District of Delaware had over 400 civil cases pending per District Court Judge from March 31, 2014 to March 31, 2015, whereas the Southern District of New York had approximately 317 civil cases per District Court Judge for the same period. *See U.S. District Courts—Civil Cases Commenced, Terminated, and Pending During the 12-Month Period Ending March 31, 2015*, FED. JUDICIAL CASELOAD STATISTICS (March 2015), http://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2015/03/31. To the extent that such a ratio reflects court congestion, this factor weighs slightly in favor of transfer.

### iii.  Local Interests in the Litigation

The Defendants assert that because the Plaintiffs are New Yorkers, the related parties are New Yorkers, the principal operative agreement is governed by New York law, and the majority of operative events occurred in New York, that New York courts have a strong interest in adjudicating this matter. (D.I. 11 at 18.) In response, the Plaintiffs point to a provision of Delaware

law that grants the Delaware Court of Chancery exclusive jurisdiction over requests for information from LLCs by members. *See* 6 Del. Code § 18-305(f). Because the Plaintiffs allege that they received fraudulent answers to their requests for disclosure, Delaware courts have an interest in hearing the case. (D.I. 18 at 23.) The Plaintiffs also note that as the site of incorporation, Delaware's interest is of at least "minimal importance." *See VideoShare. LLC, v. Google Inc.*, Nos. 13-990-92-GMS, 2014 WL 1338713, at \*6 (D. Del. Apr. 1, 2014). This factor appears to be neutral with respect to transfer.

### iv.  Enforceability of Judgment

All parties agree this factor is neutral, as judgment would be equally enforceable in both the current and proposed venues. (D.I. 11 at 19; D.I. 18 at 23.)

### v.  Familiarity with Relevant State law

Both the Southern District of New York and the District of Delaware are capable of competently applying the other state's laws. *See Nottenkamper v. Modany*, No. 14-672-GMS, 2015 WL 1951571, at \*5 (D. Del. Apr. 29, 2015). Accordingly, this factor is neutral in the *Jumara* analysis.

### c.  Transfer Analysis Summary

Considering the *Jumara* factors as a whole, the court finds the Defendants have met their burden of demonstrating that the interests of justice and convenience strongly favor transfer. The Defendants' forum preference, the location of the operative events, the convenience to the parties, the practical considerations and the relative administrative difficulty all weigh in favor of transfer to the Southern District of New York. All remaining factors are at most neutral with respect to transfer.

## V.   CONCLUSION

For the reasons stated above, the court will grant the Defendants' Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a).

Dated: July **15**, 2016

_____

UNITED STATES DISTRICT JUDGE